PEOPLE *v.* GOODFELLOW.

1. CRIMINAL LAW—TRIAL—INSTRUCTION—HOMICIDE—MALICE—MANSLAUGHTER.

In prosecution for murder, instruction that law presumes every homicide to be murder until contrary appears, and that, if killing be proven, law presumes malice, although erroneous, *held,* not prejudicial, where verdict was for manslaughter, which does not involve malice.

2. SAME—REFERENCE TO EVIDENCE.

Where, in prosecution for murder, evidence as to quarrel between deceased and one of defendant's sons was admitted without objection, and from other evidence it appears that defendant knew what had occurred, even though not present, reference thereto in court's instruction, *held,* not prejudicial.

3. SAME—INSTRUCTION—REASONABLE DOUBT—REQUESTS TO CHARGE.

Refusal to give requested instruction that it is duty of jury, before conviction may be had, that it must individually be convinced by evidence of guilt of defendant beyond reasonable doubt, was not error, where point was covered by instruction as given.

4. SAME—REQUESTS TO CHARGE—CAPACITY TO FORM INTENT.

Where court referred to testimony that defendant suffered from epileptic convulsions and instructed jury that they should consider such testimony as affecting her conduct at time and before fatal shooting, and that it was for them to say to what

---

As to presumption of malice from killing, see annotation in 4 L. R. A. (N. S.) 934; 38 L. R. A. (N. S.) 1078.

On instruction in homicide cases upon rule of reasonable doubt with reference to cause of death, see annotation in 49 L. R. A. (N. S.) 913.

extent, if any, said convulsions affected her condition, it was not error to refuse requested instruction that before defendant could be convicted jury must be satisfied beyond reasonable doubt of her mental capacity to form intent.

5. SAME—ADMISSIONS NEGATIVED NEED OF OTHER PROOF.

Defendant's testimony to effect that she was conscious of everything she did night of shooting negatived need of other proof to show her capacity to form intent.

6. SAME—EVIDENCE.

Where defendant claimed that shooting of her husband was accidental, and that it occurred while she was handing to him a gun she had found in barn, there was no error in excluding her testimony that she thought her son had placed it there, in view of testimony that she knew said son and deceased had quarreled, and gave that as reason for taking the gun to her husband.

7. SAME.

There was no error in excluding testimony offered to show that defendant's son, who was a witness, threatened to shoot defendant's attorney because he had sold, under defendant's authority, certain cows belonging to her for purpose of applying proceeds in her defense, as against defendant's claim that it tended to show attempt to handicap defense, and also disclosed interests and motives of witness in prosecution and conviction of his mother.

8. HOMICIDE—MANSLAUGHTER—WEIGHT OF EVIDENCE.

In prosecution for murder, verdict for manslaughter, *held,* not contrary to evidence.

Appeal from Iron; Bell (Frank A.), J.  Submitted January 15, 1932.  (Docket No. 195, Calendar No. 35,622.)  Decided March 2, 1932.

Mary Goodfellow was convicted of manslaughter. Affirmed.

*August J. Waffen,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Leigh C. Caswell,* Prosecuting Attorney, for the people.

WIEST, J. Charged with the murder of her husband, defendant was convicted of manslaughter.

The deceased was defendant's second husband, and was killed by a charge of buckshot fired from a shotgun in the hands of defendant. Defendant admitted having the gun, claimed that she found it in the barn, and, knowing of trouble between her husband and one of her sons by her former marriage, thought the gun might be in the barn for a wicked purpose, and, to prevent use of it, she carried it through the hay lane, in front of stanchions where her husband was engaged in milking a cow, and, while shoving the gun between stanchions toward her husband for him to take care of it, the gun was accidentally discharged.

At the trial, it was claimed in her behalf that she had been drinking and was somewhat under the influence of liquor, and, after the shooting and in the jail, she suffered an attack in the nature of epilepsy, to which she was subject. One of her sons, a man of mature years and an eyewitness of the shooting, testified that defendant pointed the gun at her husband and deliberately shot him. The shooting occurred in the cow barn upon a farm where the parties lived.

Upon review, prosecuted by defendant, several errors are assigned. Complaint is made of the following instruction:

"The law presumes every homicide, that is the act of killing a human being, to be murder, until the contrary appears. If the killing be proven, then the law presumes malice."

While that part of the instruction was technically erroneous, the verdict discloses that it had no bearing upon the result, for manslaughter does not involve malice.

The court stated to the jury that the people had introduced evidence tending to show:

"That on the day in question there had been a dispute in the house between the deceased and one of her sons, over the accusation of the deceased that the son had brought liquor to the farm house; and there had been a further dispute because of the fact that the deceased had left the accused defendant here in Iron River, and came home without her."

There had been a dispute in the house between the deceased and one of defendant's sons, but defendant was not present until the close thereof. There had been words between defendant and her husband over the fact that he had left defendant in town and come home without her. Defendant, however, knew of the trouble between her husband and one son, and gave that as her reason for endeavoring to place the gun in the hands of her husband. The quarrel in the house, between her husband and son, just previous to the shooting, was admitted without objection, and it is quite evident that defendant was well aware of what had occurred even though not present. We cannot find that the instruction affected the result.

Was it error to refuse to charge:

"It is the duty of the jury, before a conviction can be had, that it must individually be convinced by the evidence of the guilt of the respondent, beyond a reasonable doubt."

We think this sufficiently covered by the following instruction:

"That brings us to the next rule to apply, that the burden is upon the people to prove the guilt of the accused beyond a reasonable doubt and to a moral certainty. All of the jurors must be satisfied of her guilt beyond a reasonable doubt, to warrant a verdict of guilty."

The court also instructed the jury:

"Testimony has been offered here that the accused has for some years suffered epileptic convulsions or fits. That she was in such a condition in jail, after the offense charged here was committed. That this resulted from a nervous condition on her part. You have a right to consider that evidence in connection with the testimony of what she did, at and before the gun shot was fired which killed the deceased; because convulsions or fits would be no defense unless they affected her physical and mental condition at the time the killing was done. And it is for you to say to what extent, if any, these convulsions did affect her condition."

With such instruction given it was not error to refuse to charge:

"Before defendant could be convicted of any offense the jury must be satisfied beyond a reasonable doubt of the mental capacity to form the intent."

The testimony of defendant was to the effect that she was conscious of everything she did that night, and negatived need of other proof to show her capacity to form an intent. Defendant was asked by her counsel:

"Who did you think at the time brought that gun there (in the barn)?

"A. I think Nick (her son) must have brought the gun."

The court stated:

"This witness cannot tell what she thinks about who brought the gun there; and don't refer to it again. You are lawyer enough to know that the witness cannot tell what she thinks,"—

and instructed the jury to pay no attention to the question and answer.

Defendant was well aware of the trouble between her husband and son Nick, and gave that as a reason for her action that night in taking the gun to her husband. With such testimony in the case, there was no reversible error in refusing to let her tell that she thought her son Nick had placed the gun in the barn.

There was no error in excluding testimony offered to show that the witness Nick Larson threatened to shoot the attorney for the defendant because he had sold, under authority of the defendant, certain cows belonging to her for the purpose of applying the proceeds of such sale in defense of her cause. It was claimed that this tended to show an attempt to handicap the defense, and also disclosed the interests and motives of the witness in the prosecution and conviction of his mother.

It is also urged that the court should have granted a new trial on the ground that the verdict was contrary to the evidence.

The evidence fully supported the verdict rendered, and the error, if any, was in not rendering a verdict for a more serious offense. Defendant was accorded the utmost latitude in the examination of witnesses and in offering evidence in her own behalf.

We find no reversible error. Conviction affirmed.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.